IMPERIAL CASUALTY AND
INDEMNITY COMPANY

v.

Amitie BELLINI and Norbell
Realty Corporation

v.

Michael DeSantis.

No. 98–546–M.P.

Supreme Court of Rhode Island.

Feb. 16, 2000.

Joseph S. Votta, Jr., Providence, for Plaintiff.

Christopher O'Connor, William A. Poore, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

The factual and procedural history of this case comprises three actions: the first, a personal injury action in which Michael DeSantis (DeSantis), injured in a slip and fall accident, obtained a judgment against Norbell Realty Company (Norbell), the owner of real estate in Providence, Rhode Island; the second, a declaratory judgment action in which Imperial Casualty and Indemnity Company (Imperial) sought, in respect to the judgment, a de-

termination of its liabilities under an insurance policy that may have insured Norbell's interest in the property; and the third, a direct cause of action filed by DeSantis against Imperial. The latter two cases were consolidated and came before the Supreme Court on a petition for certiorari by Imperial, which argued that the motion justice erred in denying its motions to dismiss, to sever a bad-faith claim, and to limit discovery. For the reasons set forth below, we grant the petition in part and deny it in part.

### Facts and Procedure

The facts, insofar as they are pertinent to the petition, are as follows. On April 30, 1985, Amitie Bellini (Bellini), the owner of real estate at 22–24 Atwood Avenue, conveyed her interest in that property to Norbell, a company in which she apparently served as principal, officer, and major shareholder.[1] The deed evidencing the conveyance was recorded on May 6, 1985. On May 12, 1985, Imperial issued a comprehensive liability insurance policy covering several properties, including the Atwood Avenue premises. The named-insured on the policy was Bellini. It is undisputed that Norbell was not listed as an additional insured on the May 12 policy.

On October 8, 1985, DeSantis, a United States postal worker, was injured when he fell while delivering mail to the Atwood Avenue property. On October 31, 1985, Imperial issued an endorsement to its policy, apparently adding Norbell as an "additional insured" in respect to property at 109–111 Pocasset Avenue, Providence. In January 1986, Imperial received notice of a claim relating to DeSantis's injuries. DeSantis thereafter filed a complaint in Superior Court against Norbell for personal injuries. Subsequent to exercising a reservation of rights, Imperial defended Norbell in that action. After a failed attempt

1. The exact nature of the relationship between Bellini and Norbell is not clear from our examination of the record. However, counsel for Imperial expressed his belief, in oral argument, that Bellini was a principal, officer and sole shareholder of Norbell.

at settlement negotiations between Imperial and DeSantis, the case was reached for trial, and a jury returned a verdict of $235,000 in favor of DeSantis.[2] Norbell did not appeal from the judgment, however, but obtained a stay of execution on the judgment pending resolution of the declaratory judgment action.

In the meantime, Imperial filed a declaratory judgment action asking the Superior Court to construe and interpret the terms and conditions of the policy it issued on the property.[3] Imperial's complaint named Norbell and Bellini as parties but did not name DeSantis. Imperial then filed a motion to stay the then-ongoing personal injury action, pending the outcome of the declaratory judgment action. The motion was denied by the trial calendar justice. Upon learning of the declaratory judgment action, DeSantis filed a motion to intervene therein, and the motion was granted.

After judgment entered against Norbell in the personal injury action, DeSantis filed a claim against Imperial, in which he alleged that he was a judgment creditor of Imperial's insured, namely Norbell, and therefore, G.L.1956 § 27-7-2, rendered Imperial liable for the judgment. Additionally, the complaint sought to reform the insurance policy to name Norbell as an insured impliedly at least as of the time of the accident. Finally, DeSantis alleged that Imperial was estopped from denying that Norbell was insured under the policy and that Imperial breached its duty of good faith by unreasonably denying coverage to Norbell.

Imperial moved to dismiss the complaint, and in January 1998, the motion justice denied the motion to dismiss and Imperial's motion to stay the proceedings, but she granted the insurer's motion to consolidate the declaratory judgment ac-

tion with that of DeSantis's suit against Imperial. DeSantis then sought Imperial's answers to interrogatories and production of the insurance company's entire claim file in the personal injury action. Imperial objected, filed a motion to limit discovery, and argued that because the information sought by the interrogatories[4] and contained in the file was privileged, it was beyond the scope of discovery. Imperial also moved to sever the bad-faith claim from the remaining litigation, a motion that was denied in November 1998, along with Imperial's motion to limit discovery. On November 18, 1998, Imperial filed a petition for certiorari seeking review by this Court of two interlocutory rulings by the motion justice: the denial of Imperial's January 1998 motion to dismiss the direct action against it and the subsequent denial of Imperial's motions to limit discovery and to sever the bad-faith claim.

## Motion to Dismiss

■■■ Imperial argued that the motion justice erred as a matter of law in denying its motion to dismiss DeSantis's complaint. Generally, we decline to review on certiorari interlocutory decisions such as the denial of a motion to dismiss or the denial of a motion for summary judgment. *Boucher v. McGovern*, 639 A.2d 1369, 1373 (R.I.1994). In those limited circumstances in which we issue the writ, we apply on review the same standard as that applied in reviewing the grant of such a motion. *Id.* Thus, here, we shall affirm the denial of Imperial's motion to dismiss if the insurer has failed to show that DeSantis would not be entitled to relief under any set of facts that could be proven in support of his claim. *Garganta v. Mobile Village, Inc.*, 730 A.2d 1, 3 (R.I.1999).

---

**2.** In response to a motion for a remittitur, the trial justice reduced the judgment to $155,000.

**3.** Imperial first filed the action in United States District Court, which dismissed the

complaint, finding no substantial federal question.

**4.** Specifically, Imperial objected to all of the interrogatories, excepting the first three general questions.

■ Count 1 of DeSantis's complaint asserted a direct action against Imperial under § 27–7–2, which provides, in pertinent part, that "[a]n injured party * * * shall not join the insurer as a defendant," except in certain circumstances and after the injured party has "obtained judgment against the insured alone." Imperial acknowledged that DeSantis had obtained a judgment against Norbell but argued that because Norbell was not an insured of Imperial, § 27–7–2 did not provide a remedy to DeSantis.

Count 2 of DeSantis's complaint sought reformation of the insurance policy by adding Norbell as an insured party, effective presumably as of its issue date, May 12, 1985. Imperial argued that this count should have been dismissed because DeSantis, who was neither a party to the insurance policy nor in privity with parties to the contract, did not have standing to make such a claim. Imperial again based its argument on the fact that Norbell was not a named insured of the policy at the time of the accident.

Count 3 of DeSantis's complaint sounded in estoppel and waiver and alleged that the conduct of Imperial, in assuming the defense of Norbell, precluded Imperial from later disclaiming coverage of Norbell. Imperial disputed this assertion, claiming that it specifically exercised a reservation of rights before representing Norbell in the personal injury action. Imperial further contended that the duty of an insurance company to timely disclaim coverage or initiate proceedings to determine coverage runs only to its insured and not to DeSantis, a judgment creditor of an alleged insured.

Imperial's arguments with respect to the first three counts essentially rested upon the assumption that Norbell was not a named insured of Imperial at the time of

the accident. Our review of the pleadings leads us to conclude that DeSantis's complaint raised several material factual issues about liability that remain unresolved, including the relationship between Bellini and Norbell, the relationship between Imperial and Norbell, the intent of Bellini and Imperial in entering into the insurance contract, and the actions of Imperial that might be grounds for an estoppel claim. It is possible that resolution of any of these issues could provide a basis upon which relief could be granted. *See, e.g., Ogunsuada v. General Accident Insurance Company of America,* 695 A.2d 996, 1000 (R.I.1997) (under § 27–7–2, a plaintiff, in certain situations, succeeds to the insured's rights stated in the contract of insurance). Therefore, the allegations in the complaint were sufficient to warrant the denial of Imperial's motion to dismiss, and the motion justice correctly denied the motion.

The fourth and final count of DeSantis's complaint sought damages from Imperial for the insurer's alleged breach of a duty of good faith by its unreasonable delay in providing coverage and its denial of a settlement. Imperial asserted that the bad-faith claim should have been dismissed because DeSantis, who is not an insured of Imperial, lacked standing to assert such a claim against an insurance company. Imperial's arguments relied upon a line of cases in which we stated that a third-party claimant does not have a direct claim for bad-faith settlement practices against the insurer of the tortfeasor. *See, e.g., Cianci v. Nationwide Insurance Co.,* 659 A.2d 662, 666 (R.I.1995) (employee did not have a cause of action against a workers' compensation carrier under G.L.1956 § 9–1–33, entitled "Insurer's bad faith refusal to pay a claim made under any insurance policy," because the employer, not the employee, was the insured).[5] Because Impe-

---

5. Nevertheless, this case is fundamentally different from the workers' compensation claim pursuant to G.L.1956 § 9–1–33 in *Cianci,* in that plaintiff here has reduced his claim to a judgment against the tortfeasor—a presently defunct corporation that may be later proven to be Imperial's insured. *See* G.L.1956 § 27–7–2 (outlining remedies for injured parties against insured).

rial's motion to sever should have been granted, we refrain from addressing this issue.

## Motion To Sever and to
## Limit Discovery

■ Imperial argued that the motion justice abused her discretion when she denied its motion to sever the bad-faith claim and to limit discovery. Imperial contended that *Bartlett v. John Hancock Mutual Life Insurance Co.*, 538 A.2d 997 (R.I. 1988) was dispositive of this issue. We agree. *Bartlett* unambiguously directed trial and motion justices, confronted with a bad-faith claim filed simultaneously with a breach-of-contract claim, to exercise their authority under Rule 42(b) of the Superior Court Rules of Civil Procedure to sever the two claims and allow discovery only insofar as it is relevant to the contract claim and defer discovery in the bad-faith claim until the complaining party has proven the underlying breach-of-contract claim. *Bartlett*, 538 A.2d at 1002.

■ In *Bartlett*, we explained that a claim for bad faith arises only when a plaintiff can show

"the absence of a reasonable basis for denying benefits of the policy and the [insurer's] knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. * * * If a claim is 'fairly debatable,' no liability in tort will arise." *Id.* at 1000 (quoting *Bibeault v. Hanover Insurance Co.*, 417 A.2d 313, 319 (R.I.1980)).

■ Moreover, especially pertinent to the facts of the case before us is the rationale upon which *Bartlett* was decided.

"[T]here can be no cause of action for an insurer's badfaith [*sic*] refusal to pay a claim until the insured first establishes that the insurer breached its duty under the contract of insurance. * * * If the insurer prevails on the breach-of-contract action, it could not, as a matter of law, have acted in bad faith in its relationship with its policyholder. There cannot be a showing of bad faith when the insurer is able to demonstrate a reasonable basis for denying benefits." *Id.*

Although *Bartlett* was a breach-of-contract claim and the case at bar involves a statutory claim, a reformation claim, and an estoppel and waiver claim, the holding of *Bartlett* is applicable because the viability of each of the claims ultimately relies on Imperial's putative duty to indemnify Norbell for damages resulting from the accident. Although DeSantis, as a judgment creditor, may stand in the shoes of Norbell, this issue is "fairly debatable." Hence, we conclude that the motion justice erred in refusing to sever the bad-faith claim from the remaining litigation.

■ In turning to the motion justice's denial of Imperial's motion to limit discovery of the claim file and answers to interrogatories, *Bartlett* is again instructive. The plaintiff in *Bartlett* sought production of the entire claim file. 538 A.2d at 998. The insurance company argued that it was entitled to a qualified privilege in respect to materials that were prepared in anticipation of litigation, under Rule 26(b)(3) of the Superior Court Rules of Civil Procedure.[6] *Bartlett*, 538 A.2d at 1002. We agreed, explaining that "[a]llowing full disclosure of the insurer's claim file based solely on plaintiff's allegation of bad faith would invite all plaintiffs to include a bad-faith claim with every breach-of-contract claim." *Id.* Although acknowledging that a plaintiff might need the information in the claim file to prove a bad-faith claim, that need, *Bartlett* pointed out, is out-

---

6. Rule 26(b)(3) of the Superior Court Rules of Civil Procedure, formerly Rule 26(b)(2), states, in part, that

"a party may obtain discovery of documents * * * prepared in anticipation of litigation or for trial * * * only upon a show-

ing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

weighed first by the insurer's right to defend itself against the breach-of-contract claim and second by the fact that a bad-faith claim cannot be maintained until the plaintiff proves that the insurer breached its contract of insurance. *Id.* As applied to this case, DeSantis's need for information in the claim file or to certain answers to interrogatories to prove the bad-faith claim is outweighed by Imperial's need to defend itself against the statutory, reformation, and estoppel and waiver claims. Consequently, the motion justice abused her discretion in denying Imperial's motion to limit discovery of the file that was submitted under seal.

 The invocation of Rule 26(b)(3), however, does not bar all discovery or preclude obtaining information through interrogatories. In this case, DeSantis is entitled to limited discovery of the claim file on all issues that are not privileged, and he is entitled to answers to the interrogatories that do not invade privileged information. For example, information concerning the relationships between Imperial and Norbell and between Imperial and Bellini may be relevant to DeSantis's claims, and such information is discoverable. Moreover, there is no privilege with respect to Norbell, a defunct corporation. On the other hand, any information supporting the bad-faith claim is barred at this time.

Because we are ordering severance of the bad-faith claim from the remaining issues, it is necessary that the motion justice review the file submitted under seal to remove and maintain under seal (1) privileged material prepared in anticipation of litigation or in communications between Imperial and its attorneys and (2) material pertaining to the bad-faith claim. The remaining material shall be subject to discovery by DeSantis.

### Conclusion

In summary, we deny in part and grant in part the petition for certiorari. We deny Imperial's petition in respect to the denial of its motion to dismiss. We grant the petition insofar as we reverse the Superior Court's denial of Imperial's motion to sever DeSantis's bad-faith claim from the coverage issue. Additionally, we grant certiorari and direct the motion justice to review Imperial's sealed claim file and allow discovery by DeSantis of those documents that do not involve the bad-faith claim or those subject to a qualified privilege as material prepared in anticipation of litigation, which documents shall remain sealed and protected from discovery by DeSantis at this time. The papers of the case are remanded to the Superior Court with our instruction and opinion endorsed thereon.