**ALLSTATE INSURANCE COMPANY,**
Appellant–Defendant,

v.

**Timothy CLANCY, Robert Goad, and Dianna Goad, Appellees–Plaintiffs,**

and

**Harold Hagberg, Appellee–Defendant.**

No. 45A03–0910–CV–498.

Court of Appeals of Indiana.

Oct. 26, 2010.

John E. Hughes, Robert J. Dignam, Kevin G. Kerr, Hoeppner Wagner & Evans LLP, Merrillville, IN, Attorneys for Appellant.

Terrence M. Rubino, Steven J. Sersic, Rubino, Ruman, Crosmer, Smith, Sersic &

Polen, Dyer, IN, Attorneys for Appellees Dianna and Robert Goad.

## OPINION

KIRSCH, Judge.

In an action alleging it engaged in bad faith settlement practices, Allstate Insurance Company ("Allstate") brings this interlocutory appeal of the trial court's order granting a motion to compel the production of documents and raises the following restated issue: Whether the trial court abused its discretion by compelling production of documents subject to the attorney-client privilege on the ground that Allstate has implicitly raised an advice of counsel defense, thereby waiving the attorney-client privilege.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On May 27, 2002, an accident occurred between a vehicle operated by Tim Clancy and a motorcycle operated by Mrs. Dianna Goad ("Mrs. Goad"). Mr. Robert Goad ("Mr. Goad") was riding on his own motorcycle alongside Mrs. Goad when the accident happened. As Clancy's vehicle crossed the center line, Mr. Goad swerved to avoid a collision. Mr. Goad then turned his head back and saw Clancy's vehicle strike Mrs. Goad and witnessed her being thrown from her motorcycle. Mrs. Goad suffered serious injuries including the loss of a leg. The Goads filed a complaint against Clancy in which Mrs. Goad claimed damages for injuries sustained in the accident, and Mr. Goad claimed damages for negligent infliction of emotional distress.

Allstate insured Clancy's vehicle, and attorney Harold Hagberg ("Hagberg") was assigned to defend the insured. Clancy's relevant insurance policy provides coverage limited to $100,000 per person for bodily injury. The policy is limited by the following insurance policy term:

> The limit stated for bodily injury is our total limit of liability for all damages because of bodily injury sustained by any one person, including all damages sustained by anyone else as a result of that bodily injury.

*Appellant's App.* at 91. Hagberg notified Allstate that Mr. Goad was making a claim for negligent infliction of emotional distress and noted that it was unclear whether his claims were derivative of Mrs. Goad's and whether such a claim was covered under the $100,000 policy limit. Prior to a settlement offer from Allstate, the Goads notified Allstate that Mrs. Goad would not accept a policy limit offer unless Mr. Goad received a policy limit offer as well. Allstate then offered Mrs. Goad the $100,000 policy limit but, citing uncertainty as to whether Mr. Goad's claim was derivative in nature, did not make an offer to Mr. Goad. Mrs. Goad rejected the offer.

Allstate then hired attorney Richard Samek ("Samek") to seek declaratory relief in federal district court regarding the meaning of the per-person limit language contained in the policy held by Clancy. On March 23, 2005, the district court held that "to the extent that Mr. Goad asserts a claim for emotional harm from witnessing the personal injuries sustained by his wife Dianna, such a claim is subject to the same per-person limit of liability under the Allstate policy as the per-person limit applicable to the claim of Dianna Goad for her bodily injury." *Appellant's App.* at 96–97.

Meanwhile, the Goads pursued their action against Clancy, and the jury eventually returned an $11,000,000 verdict, consisting of $10,000,000 for damages resulting from the injuries to Mrs. Goad and $1,000,000 for Mr. Goad's emotional distress. At the verdict stage of the proceedings, Allstate moved to intervene for a

clarification as to the nature of any emotional distress damages being awarded to Mr. Goad. The trial court denied Allstate's motion to intervene. We affirmed the trial court's judgment on the jury verdict in 2006. *Clancy v. Goad,* 858 N.E.2d 653 (Ind.Ct.App.2006) *trans. denied.*

Following the jury verdict, Clancy assigned his claims against Allstate to the Goads who, on May 30, 2007, filed a complaint alleging, among other things, that Allstate's decision not to offer a $100,000 policy limit to Mr. Goad in addition to $100,000 for Mrs. Goad was made in bad faith. In its answer, Allstate stated the following affirmative defense:

> [t]he emotional distress claim(s) of Robert Goad in cause No. 45D11–0209–CT–200 and whether insurance coverage existed for such claims is fairly debatable.

*Appellant's App.* at 76.

During discovery, the Goads sought the production of numerous documents including communications between Allstate and Samek. Out of the 4,658 pages that constituted Allstate's entire file pertaining to the case, Allstate withheld forty-four pages of communication between Allstate and Samek arguing that the documents were protected by the attorney-client privilege and were neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The documents sought by the Goads are letters and e-mails to and from Samek, invoices from Samek, and a timeline of events including communications and opinions exchanged between Allstate and Samek.

The Goads filed a motion to compel Allstate to turn over the withheld documents, arguing that Allstate's affirmative defense calling the nature of Mr. Goad's claim "fairly debatable," amounted to reliance on the advice of counsel defense. By implicitly raising the advice of counsel defense, the Goads argued, Allstate waived attor-ney-client privilege. Granting the Goads' motion to compel, the trial court found:

> [t]hat Allstate opened the issue that it denied coverage on advice of counsel in its affirmative defense that coverage of Robert Goad's claim was 'fairly debatable.' Accordingly, the Court finds that Allstate has waived attorney-client privilege in connection with advice of counsel as to all discovery related to the decision to deny coverage for Robert Goad's emotional distress claims.

*Id.* at 43–44. The trial court certified the issue for interlocutory appeal and we accepted jurisdiction.

## DISCUSSION AND DECISION

■ As an initial matter we note that the Goads include in their brief an argument that Allstate's disclosure of a number of documents from their case file constitutes a general waiver of privilege. The trial court held that the privilege was waived in connection with the advice of counsel defense. Before addressing the advice of counsel defense and the waiver arguments in that context, we pause to consider the general waiver argument.

■ The documents at issue were disclosed pursuant to a court order. Although there is some authority for the proposition that "[d]isclosure of a privileged communication, even pursuant to an erroneous order of the court or pursuant to a subpoena, operates as a definitive waiver for all time and with respect to all parties," *see Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter,* 32 F.2d 195 (2d Cir. 1929), there is authority to the contrary. In *Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal.2004), the United States District Court for the Northern District of California discussed the contrary approach noting, "courts generally hold that when production of privi-

leged communications is judicially compelled, compliance with the order does not waive the attorney-client privilege that should have shielded the communications from disclosure." 224 F.R.D. at 478 (quoting 2 Paul R. Rice, Attorney–Client Privilege in the United States § 9:25, at 64 (2d ed.1999)). Waiver is the voluntary and intentional relinquishment of a known right, claim, or privilege. *Unincorporated Operating Div. of Ind. Newspapers, Inc. v. Trs. of Ind. Univ.*, 787 N.E.2d 893, 919 (Ind.Ct.App.2003) (citing 28 AM.JUR.2D Estoppel and Waiver § 197 (2000)). We conclude that where the disclosure is compelled it is not voluntary, and the act of disclosure alone under that circumstance should not be interpreted as a waiver of any kind, limited or general, of the privilege.

■ Allstate contends that the trial court abused its discretion in granting the Goads' motion because Allstate has not and will not rely on advice of counsel as a defense. The Goads counter that Allstate's affirmative defense that coverage of Mr. Goad's claim was "fairly debatable" implicitly relies on advice of counsel and waives the attorney-client privilege.

■ A trial court has broad discretion in discovery disputes, and its decisions are reviewed for abuse of discretion. *The Hartford Fin. Servs. Group, Inc. v. Lake County Park & Recreation Bd.*, 717 N.E.2d 1232, 1234 (Ind.Ct.App.1999). Our starting point is Ind. Trial Rule 26(B)(1) which provides that "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending dispute...." Here, there is no question that the documents are both relevant to the subject matter and privileged, and the question becomes whether Allstate has waived its attorney-client privilege.

An insurer defending against bad faith allegations begins on a slippery slope. Its state of mind is at issue, and, indeed, is often the issue in the case. Highly relevant to that state of mind is the advice that it may have received from its attorneys in settling or not settling the claim. Some jurisdictions hold that good faith reliance upon the advice of counsel is a complete defense to a bad faith claim. *See, e.g., Brandon v. Sterling Colorado Beef Co.*, 827 P.2d 559, 561 (Colo.Ct.App.1991). Other states find that such reliance is simply one of a number of factors for the trier of fact to consider in making the determination. *See, e.g., Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 174 (Okla.2000)(*quoting Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 282 (5th Cir.1988)). Of particular relevancy is evidence that the insurer acted contrary to the advice of counsel. *See Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254 (Del.1995).

It has long been held that by raising the defense of good faith reliance upon advice counsel, a party waives the attorney-client privilege. The Restatement of the Law Governing Lawyers provides:

> The attorney-client privilege is waived for any relevant communication if the client asserts as to a material issue in a proceeding that ... the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct[.]

RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 80(1)(a) (2000).

■ The waiver of the attorney-client privilege may be explicit or by implication. *See Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095 (7th Cir.1987). Here, Allstate has not expressly raised the advice of counsel defense, and, indeed, it has expressly waived the defense. The issue thus becomes whether Allstate has impli-

edly raised the defense notwithstanding its express waiver.

The issue of when the attorney-client privilege has been waived in insurance bad faith cases has proven problematic nationally, and courts have taken divergent paths. On one extreme are courts that require the advice of counsel defense to be raised expressly in a pleading in order to find waiver. *E.g., Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.,* 32 F.3d 851, 863 (3d Cir.1994). ("[A]dvice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-communication."). On the other extreme, some courts hold the mere denial of a bad faith claim or assertion of good faith raises the defense and waives the privilege either on the theory that advice of counsel is intrinsically woven into such claims, or using a very low "relevance" standard. *E.g., Jones v. Nationwide Ins. Co.,* 2000 WL 1231402 (M.D.Pa.2000); *see also Tackett, supra* (finding injection of issue to which advice of counsel was relevant is enough to raise defense and waive privilege).

Between these extremes are courts that require some affirmative act by the insurer that places the advice of counsel at issue in order to waive the privilege. In his treatise, Dean Wigmore supported this approach on the basis of fairness:

> A waiver is to be predicated not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege. It is not to be both a sword and a shield....

8 Wigmore on Evidence (McNaughton Rev.1961), § 2388, at 855; quoted at *State Farm Mut. Auto. Ins. Co. v. Lee,* 199 Ariz. 52, 13 P.3d 1169, 1177, n. 4 (2000).

The leading case in this group is *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash. 1975) which adopted the following methodology for determining when waiver occurs:

> (1) [a]ssertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

The *Hearn* approach allows for a balancing of the rights of the parties while counter-balancing important issues of attorney-client privilege protection and the truth seeking function of the courts. We follow it here and turn to the question whether by the affirmative act of claiming that the issue of insurance coverage for Robert Goad's claim was "fairly debatable," Allstate made its communications with counsel regarding such coverage relevant to the case such that a denial of production of such communications would deny the Goads access to information vital to their claim.

A number of courts have held that no waiver arises from the mere contention that an insurer acted reasonably or in good faith. *See, George v. Wausau Ins. Co.,* 2000 WL 1728511, 2000 U.S. Dist. LEXIS 16813 (E.D.Pa.2000) (affirmative defense that insurer had acted in a proper and reasonable manner with a proper and reasonable basis does not constitute waiver); *see also, Nat'l Union Fire Ins. Co. v. Dominguez,* 873 S.W.2d 373, 375 (Tex.

1994) (insurer's assertion of a reasonable basis to deny coverage merely a rebuttal to an allegation that it had acted in bad faith). *But see, Jones v. Nationwide Ins. Co.*, 2000 WL 1231402, at *1, 2000 U.S. Dist. LEXIS 18823, at *2 (M.D.Pa.2000) (holding that Nationwide had impliedly pled an "advice of counsel" defense by asserting an affirmative defense that it "acted reasonably and in accordance with the insurance contract and the applicable laws of the Commonwealth of Pennsylvania when issuing the policy of insurance, and when handling, investigating and evaluating plaintiff's claim").

In *Hartford Financial Services Group v. Lake County*, 717 N.E.2d 1232 (Ind.Ct. App.1999), we held that an insurer does not waive its attorney-client privilege by the mere denial of an allegation that it acted in bad faith. We are unable to discern a meaningful difference between the denial of an allegation that a party acted in bad faith from the assertion that it acted in good faith. Similarly, we do not find a meaningful difference from an assertion that an insurer acted reasonably in denying coverage from a contention that insurance coverage was "fairly debatable." None of such actions, standing alone, is a sufficient affirmative act to raise the defense of advice of counsel impliedly or to make the client's communications with counsel relevant to the case such that a denial of production of such communications would deny opposing parties access to information vital to their claim.

The fact that Allstate received advice from counsel prior to making its decision is not sufficient to constitute waiver; such fact, standing alone, is not sufficient to constitute waiver.

Rather, the issue is whether Allstate in attempting to demonstrate that it acted in good faith actually injected its reliance upon such advice into the litigation. The key factor in each instance is that of reliance of the client upon the advice of the attorney. *See Harter v. University of Indianapolis*, 5 F.Supp.2d 657, 664 (S.D.Ind. 1998) ("when a client files a lawsuit in which his or her state of mind . . . may be relevant, the client does not implicitly waive the attorney-client privilege . . . *unless the client relies specifically on advice of counsel to support a claim or defense*.") (Emphasis added.) Thus, an insurer that states that it was not acting in bad faith because it acted in accordance with the applicable law neither expressly, nor impliedly, raises the defense of advice counsel. In such an instance, it is not the subjective good-faith reliance on the advice of counsel that constitutes the defense, but the objective compliance with applicable law.

■■■ Indiana has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured and the cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518–19 (Ind.1993). The cause of action does not arise every time an insurance claim is erroneously denied. *Id.* at 520. In fact, a good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for recovery in these causes of action. *Id.*

■■■ It has long been the law in Indiana that insurance companies may, in good faith, dispute claims. *Id.* However, an insurer which denies liability knowing that there is no rational, principled basis for doing so has breached its duty. *Id.* In cases where bad faith is alleged due to denial of coverage, a plaintiff must establish that the insurer had knowledge that there was no legitimate basis for denying liability in order to prove bad faith. *Mon-*

*roe Guar. Ins. Co. v. Magwerks Corp.,* 829 N.E.2d 968, 976 (Ind.2005).

 Just as the advice of counsel is a defense to a claim of bad faith, the argument that a claim is fairly debatable is a good faith defense to a bad faith claim. If the claim is fairly debatable, then the insurer has a reasonable basis to deny the claim:

> If an insured's claim is fairly debatable either in fact or law, an insurer cannot be said to have denied the claim in bad faith. The fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish that the insurer had a reasonable basis to deny the claim. The focus is on the existence of a debatable issue, not on which party was correct.

*Dakota, Minn. & E. R.R. Corp. v. Acuity,* 771 N.W.2d 623, 630 (S.D.2009) quoting 46A C.J.S. *Insurance* § 1873 (2008). Some states require a review of whether the insurer's actions were unreasonable or whether the claim was fairly debatable at the time the insurer made the decision to deny or litigate the claim. *See, id.*

The defense that the claim was 'fairly debatable' was discussed in *Bellville v. Farm Bureau Mutual Insurance Co.,* 702 N.W.2d 468 (Iowa 2005), an appeal involving the issue of the sufficiency of the evidence to support a finding of bad faith. After noting that a successful bad faith claim was composed of an objective element, *i.e.,* the lack of a reasonable basis and a subjective element, *i.e.,* the knowledge of the lack of a reasonable basis, the Iowa Supreme Court stated the following:

> A reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law. A claim is "fairly debatable" when it is open to dispute on any logical basis. Stated another way, if reasonable minds can differ on the cov-

erage-determining facts or law, then the claim is fairly debatable. The fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish the first element of a bad faith claim. The focus is on the existence of a debatable issue, not on which party was correct. Whether a claim is fairly debatable can generally be decided as a matter of law by the court. That is because where an objectively reasonable basis for denial of a claim actually exists, the insurer cannot be held liable for bad faith as a matter of law. As one court has explained, courts and juries do not weigh the conflicting evidence that was before the insurer; they decide whether evidence existed to justify denial of the claim.... Even when the insurer lacks a reasonable basis for its denial of a claim, liability for bad faith will not attach unless the insurer knew or should have known that the basis for denying its insured's claim was unreasonable.

702 N.W.2d at 473–474 (internal citations, quotations, and emphases omitted). Allstate has expressly waived the advice of counsel defense and this conclusion, *i.e.,* a fairly debatable issue exists, can be reached without access to the privileged information between attorney and client.

We hold that the "fairly debatable" defense, absent any other connection to reliance upon advice of counsel, is tantamount to a good faith defense and insufficient in and of itself to waive attorney-client privilege. Accordingly, we reverse the trial court's order compelling discovery of the challenged documents.

Reversed.

FRIEDLANDER, J., concurs.

ROBB, J., dissents with separate opinion.

ROBB, Judge, dissenting.

I respectfully dissent from the majority's opinion as to the issue raised by Allstate.

I agree with the majority's pronouncement of the applicable law, but I disagree with the majority's application of the law to Allstate and would distinguish an affirmative defense that a plaintiff's claim is "fairly debatable" when referring to a factual issue from an affirmative defense that a plaintiff's claim is "fairly debatable" as to a legal issue.

When an insurer asserts that a claim is "fairly debatable" to indicate a factual issue affects the claim's strength or legitimacy, it does not necessarily rely on the advice of counsel and therefore does not necessarily waive the attorney-client privilege. Such factual issues would arise, for example, when the policy is clear but coverage is not clear because of an issue as to whether a person lives in the same home as the insured, whether the insured was speeding, or the severity of an injury.

Alternatively, when an insurer asserts that a claim is "fairly debatable" refers to a legal issue, it necessarily relies on advice of counsel and waives the attorney-client privilege. Such legal issues would arise, for example, when the "fairly debatable" issue involves contract interpretation, whether the policy covers claims for negligent infliction of emotional distress, or whether a policy's per-person limit restricts coverage. The Delaware Supreme Court has held: "Where ... an insurer makes factual assertions in defense of a claim which incorporate, expressly or implicitly, the advice and judgment of its counsel, it cannot deny an opposing party an opportunity to uncover the foundation for those assertions in order to contradict them." *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 259 (Del.1995) (citation omitted).

This application of the law would not undermine the key policy concerns the majority identifies: balancing of parties' rights, attorney-client privilege protection, and the truth-seeking function of the courts. Rather, insurers might more clearly indicate when they have relied on an attorney's legal conclusion to deny coverage—and therefore put an attorney's advice at issue to waive the attorney-client privilege—and alternatively when they have not relied on the advice of counsel but determined that the facts of a particular case led to denial of coverage. In future cases this application of the law might clarify the substantive issues in dispute and when the attorney-client privilege is waived.

Here, Allstate's affirmative defense refers to a legal issue: whether the policy's per-person liability limit precluded Mr. Goad from recovering damages. The record reveals Allstate's "fairly debatable" affirmative defense refers to this legal uncertainty, not a factual uncertainty. The policy's per-person limit was the central issue in Allstate's declaratory action in the federal district court. *See Allstate Ins. Co. v. Clancy*, No. 2:03 CV 428, 2005 WL 5949755 (N.D.Ind. March 23, 2005). In a separate pleading, Allstate cited the federal district court's ruling, quoting the following:

> [T]o the extent that Mr. Goad asserts a claim for emotional harm arising from witnessing the personal injuries sustained by his wife Dianna, such a claim is subject to the same per-person limit of liability under the Allstate policy as the per-person limit applicable to the claim of Dianna Goad for her bodily injury.

Appellant's Appendix at 81 (emphasis and citation omitted). Allstate also asserted:

To the extent that Mr. Goad's emotional harm arose from an impact of bodily injury sustained by him and not from witnessing the personal injuries sustained by his wife Dianna, the Allstate policy of insurance would provide for a per-person limit of liability separate from the limit applicable to Dianna Goad's claim.

*Id.* Perhaps more importantly, in the trial court hearing following the federal court's ruling, Allstate repeatedly indicated that this affirmative defense and the "fairly debatable" phrase in particular referred to the legal issue of whether Mr. Goad would be covered under the policy's per-person limit. At no point in the trial court hearing did Allstate expressly or implicitly indicate that the "fairly debatable" phrase referred to a factual uncertainty or dispute.

This case should not be confused with cases the majority cites from other jurisdictions where courts have concluded that an insurer's challenge to a claim as "fairly debatable" did not necessarily give rise to a bad-faith tort claims regardless of whether "fairly debatable" referred to fact or law. *E.g., Bellville v. Farm Bureau Mut. Ins. Co.,* 702 N.W.2d 468 (Iowa 2005); *Dakota, Minn. & E. R.R. Corp. v. Acuity,* 771 N.W.2d 623 (S.D.2009); *see also Seastrom v. Farm Bureau Life Ins. Co.,* 601 N.W.2d 339, 346 (Iowa 1999) (same); *Imperial Cas. & Indem. Co. v. Bellini,* 746 A.2d 130, 134 (R.I.2000) (same). Those cases determined the effectiveness of the "fairly debatable" defense to a bad-faith claim; this case addresses how a "fairly debatable" defense to a bad-faith claim could affect an insurer's attorney-client privilege. Similarly, our decision of *Hartford Financial Services Group, Inc. v. Lake County Park and Recreation Board,* 717 N.E.2d 1232 (Ind.Ct.App.1999), addresses the scope of the attorney-client privilege in first-party-insurer bad-faith cases, which is a different issue than the one now before us. The *Hartford* opinion distinguished itself from several other cases. The case now before us more closely resembles those cases on the facts and issues that *Hartford* distinguished them than it does *Hartford.* *See Blockbuster Entm't Corp. v. McComb Video, Inc.,* 145 F.R.D. 402 (M.D.La.1992); *Silva v. Fire Ins. Exch.,* 112 F.R.D. 699 (D.Mont.1986); *Colbert v. Home Indem. Co.,* 45 Misc.2d 1093, 259 N.Y.S.2d 36 (N.Y.Sup.Ct.1965).

Based on the reasoning above and the facts in the record, I would conclude that Allstate's affirmative defense that Mr. Goad's coverage was "fairly debatable" necessarily referred to advice of counsel, thereby waiving Allstate's attorney-client privilege.