#26891-rev & rem-LSW

**2015 S.D. 24**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TIMOTHY ANDREWS,                              Plaintiff and Appellee,

     v.

RIDCO, INC.,                                  Defendant,

     and

TWIN CITY FIRE INSURANCE CO.        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE WALLY EKLUND
Judge

\* \* \* \*

MARK A. KOEHN
Rapid City, South Dakota

     and

GARY JENSEN of
Beardsley, Jensen, & Von Wald, PLLC
Rapid City, South Dakota

     and

SCOTT ARMSTRONG
Rapid City, South Dakota               Attorneys for plaintiff
                                         and appellee.

\* \* \* \*

ARGUED ON
NOVEMBER 18, 2014

OPINION FILED **04/29/15**

FRANCIS J. MALONEY III of
Maloney Lauersdorf Reiner, PC
Portland, Oregon

      and

JASON M. SMILEY of
Gunderson, Palmer, Nelson & Ashmore, LLP
Rapid City, South Dakota            Attorneys for defendant
                                       and appellant.

#26891

WILBUR, Justice

[¶1.] Timothy Andrews sued Twin City Fire Insurance Company (Twin City) and Ridco, Inc. a/k/a Riddle's (Ridco) for the alleged bad faith handling of his workers' compensation claim. During the discovery stage of the bad faith claim, Andrews filed a motion to compel Twin City to produce wholly unredacted claim files, personnel files, and privilege logs. The circuit court concluded that Twin City impliedly waived the attorney-client privilege and ordered Twin City to produce all of the disputed documents in unredacted form. Twin City filed a petition for intermediate appeal. We reverse and remand.

**Background**

[¶2.] Andrews suffered a compensable, work-related injury to his neck and back on March 4, 2005, while employed by Ridco as a gold polisher. Twin City insured Ridco for purposes of workers' compensation during all times relevant to Andrews's claims. Twin City timely paid, in the proper amounts, Andrews's temporary disability benefits from his date of injury through May 12, 2005.[1] On April 11, 2007, Andrews filed an action before the South Dakota Department of Labor seeking additional workers' compensation benefits. The administrative law judge ruled in favor of Andrews and determined that Andrews's 2005 work-related

---

1. Twin City terminated Andrews's temporary disability benefits beginning on May 17, 2005, based on the stated grounds that Andrews was not authorized by a doctor to receive chiropractic care. Twin City hired an occupational physician to conduct an independent medical examination. Based on the results of the examination, Twin City discontinued payment for Andrews's continued medical treatment on April 11, 2006.

injury was a major contributing factor to his neck pain and continued need for treatment.

[¶3.]        On July 27, 2010, Andrews filed the present lawsuit against Twin City and Ridco alleging bad faith handling of his workers' compensation claim. Andrews asserted (1) common law bad faith; (2) aiding and abetting or civil conspiracy to commit fraud or statutory deceit and to deny first party insurance benefits in bad faith; (3) fraud or statutory deceit; and (4) retaliatory discharge. This action was based on the theory that Twin City systematically handled workers' compensation claims, including Andrews's claim, in bad faith under a claim handling program known as the "Large Loss Initiative" (the Initiative)—also referred to as the "Million Dollar List." Twin City's parent company, the Hartford Financial Services, Inc. (the Hartford), created the Initiative in October of 1998. The purpose of the program was to give greater attention to claims that had reserves in excess of $1,000,000. Over the course of the program, the Hartford identified 247 "large loss initiative" claims. Twin City provided e-mails from the Hartford indicating that the Initiative was discontinued in 2000. Andrews pointed out, however, that the Hartford mentioned the possibility of conducting a similar review of claims with a $500,000 reserve in an e-mail dated March 6, 2001.

[¶4.]        Although Andrews's claim file was never reserved for more than $322,688—falling short of both the $1,000,000 and the $500,000 thresholds—Andrews continued to argue that there was a connection between the Initiative and his claim file. Andrews based this assertion on the allegation that Twin City's claim-handling practices were similar to the practices employed under the

Initiative. Andrews noted that "some of the very same Hartford claim department personnel involved in handling and supervising [the Initiative] program claims were also involved in [Twin City's] handling of Timothy Andrews'[s] claim[.]"

[¶5.] Andrews sought discovery of a number of documents from Twin City. On May 23, 2012, Andrews served Twin City with requests for production, which included the following two requested sets of documents at issue on this appeal: (1) the Andrews claim file[2] and (2) 247 workers' compensation claim files administered under the Initiative.[3] Twin City objected to both of these requests on the basis that certain documents were protected by the attorney-client privilege. Initially, Twin City refused to provide Andrews with any requested material containing attorney-client privileged information.

[¶6.] On November 26, 2012, Andrews filed a motion to compel Twin City to produce all of the documents responsive to his requests. Twin City opposed the

---

2.    "Claim file," as used in this opinion, refers to all materials maintained by Twin City for a particular workers' compensation claim. The use of the term "claim file notes," or "activity log," refers to the contemporaneous diary of activity conducted with respect to a claim.

3.    Andrews's request for production pertaining to the other workers' compensation claims stated:

> **Request No. 46**: Please produce any and all documents relating to 'large loss initiative' program files which stem or stemmed from workers' compensation policies issued by Twin City Fire Insurance Company, whether such files were included in the 247 'million dollar' claims included in the initial stage of this program or the unknown number of '$500,000' or smaller claims included in the later stages of this program. The time-frame covered by this request is from the October 1998 hiring date of Mark Deluse (and the subsequent creation of the 'million dollar list' or 'large loss initiative' program) to the present date.

motion and moved for a protective order. The court entered an order on February 11, 2013, requiring Twin City to submit the Andrews claim file notes to the court for an in camera review. The court stated that it would conduct the in camera review before making a "final determination as to whether some or all such documents are subject to discovery." The order further required Twin City to produce for Andrews the claim file notes for the 247 "large loss initiative" claim files. In accordance with the order, Twin City produced 199 of the 247 "large loss initiative" claim file notes (199 "other" claim file notes), which were all the claim file notes that existed at the time of Andrews's request. Twin City redacted the attorney-client privileged communications contained in these claim file notes.

[¶7.]        The circuit court conducted a status hearing on May 28, 2013, to address the attorney-client privilege as it applied to both the Andrews and the 199 "other" claim files. The court stated that "if [the redacted material is] a communication from an attorney to the claims people or if it's a communication from claims people to the attorney seeking legal advice, it should not be produced. But otherwise, everything is subject to production from what I saw."

[¶8.]        On June 7, 2013, the circuit court entered a second order confirming its statements during the status hearing, stating in pertinent part:

> **The court**: Here, it has not been alleged that Heglin "completely" delegated her claim handling decisions to outside counsel. Nevertheless, the Supreme Court's reasoning in both [*Dakota, Minnesota & Eastern Railroad Corp.*] and *Bertelsen* is applicable. To the extent that Nicole Heglin embedded attorney-client communications going to the factual grounds (i.e., the reasonable basis or lack thereof) of her benefits decisions in the claim file's central document (i.e., the activity log), the statutory purpose of which document is to provide a record of the insurer's

> claim-handling decisions, she "inject[ed] the attorney's advice into the case."

The court ordered Twin City to apply this standard when reviewing its redactions to the Andrews claim file notes and the 199 "other" claim file notes. The court further ordered that all of these documents be produced no later than June 21, 2013.[4] Twin City reviewed each of the previous redactions and unredacted most, but not all, of the previously redacted attorney-client communications in the Andrews claim file notes and submitted the notes to Andrews and the court.

[¶9.]     On October 22, 2013, Andrews filed a motion to compel Twin City to produce wholly unredacted claim file notes for the Andrews claim file and the 199 "other" claim files. Andrews argued that he was entitled to production of the unredacted attorney-client communications based on the following reasons:

> (i) the facts of the proceeding; (ii) SDCL 58-3-7.4 regarding the legally mandated contents of the insurer's claim file; (iii) previously briefed generally applicable law pertaining to the status of attorney-client communications included in otherwise discoverable material in bad faith actions, particularly where the insurer defendant is (as here) implicitly relying on an 'advice of counsel' defense, (iv) [the circuit court's] February 11, 2013, discovery order, and (v) [the court's] June 7, 2013, order specifically addressing the status of attorney-client communications in the activity logs at issue.

Additionally, Andrews compared the Andrews claim file notes to three pages of heavily redacted claim file notes from Jackie Hammonds's claim file—one of the 199

---

4.     On July 24, 2013, Andrews moved for sanctions against Twin City under SDCL 15-6-37. Andrews argued that Twin City failed to timely produce the materials in accordance with the June 7, 2013 order. The circuit court denied Andrews's motion for sanctions.

"other" claim files.[5]  The redactions to the Hammonds claim file notes, Andrews contended, left the reader "with absolutely no idea of what decisions were made during that time period or of the grounds for those decisions."  In comparison, Andrews argued that the extent of the redactions to the Andrews claim file notes is "conclusive as to the failure of these two logs at least to comply with the requirements of SDCL 58-3-7.4."  Twin City responded that the attorney-client communications that were redacted constituted protected legal communications occurring after Andrews initiated the administrative proceeding against Twin City and, therefore, the communications were not a delegation of Twin City's claims handling responsibility.

[¶10.]     Twin City filed for a protective order "limiting the scope of discovery to materials and information related to the Andrews claim, the sole subject matter of this case."  Twin City argued that "[t]he additional discovery requested by [Andrews] is not likely to lead to the discovery of admissible evidence because there is no connection between these 'other claim' files and [Andrews's] claim or alleged damages."  The circuit court conducted a hearing on November 5, 2013, regarding Andrews's motion to compel and on Twin City's motion for a protective order.  Twin City offered to provide the Andrews claim file notes for an in camera inspection,

---

5.  The Hammonds claim file was the subject of the 2007 decision *Hammonds v. Hartford Fire Insurance Co.*, 501 F.3d 991 (8th Cir. 2007).  In that case, Hammonds argued that the Initiative was the impetus for the alleged bad faith handling of her workers' compensation claim.  The United States District Court for the District of South Dakota found that the Initiative did not constitute bad faith and thereby granted summary judgment in favor of the Hartford.  The Eighth Circuit Court of Appeals affirmed.

stating as follows: "If the [c]ourt would like us to produce . . . samples, it's a lot of materials, but we would be happy to produce it again for an in camera review. That's as to the Andrews[] claim file, Your Honor. There's not been any showing of waiver." The circuit court rejected the offer for an in camera inspection.

[¶11.]     The circuit court concluded that Twin City impliedly relied on the advice of counsel in handling Andrews's bad faith claim and the 199 "other" claims, and therefore waived the entire attorney-client privilege:

> **Twin City**: Is there a specific thing that the [c]ourt finds was a constitute [sic] of the waiver [of the entire attorney-client privilege]?
>
> **The court**: Well, I believe it is implied.
>
> **Twin City**: And would it be implied for the Andrews[] claims and the other 199 claims?
>
> **The court**: Yes. We'll be in recess.

On November 14, 2013, the court filed an order denying Twin City's motion for a protective order. The court further ordered that Twin City "produce within 30 days completely unredacted copies of the claim file notes it has previously been ordered to produce in the present proceeding."

[¶12.]     Twin City filed a motion for reconsideration and requested that the court allow it to file the disputed materials under seal for purposes of this appeal. Twin City also offered to provide the court with the 199 "other" claim file notes and a privilege log in order to conduct an in camera review. On December 3, 2013, the circuit court conducted a hearing on the motion. The court concluded that it would adhere to the earlier November 14 order, stating as follows:

> **The court**: I'm going to adhere to my earlier ruling on this. Quite frankly, I think without a privilege log on [the 199 "other" claims], I don't think there's anything that the Supreme Court is

> going to come forward. They don't know what I've not allowed
> . . . I think that the process was not followed in this matter from
> the outset, and my ruling stands. . . .

In an order dated that same day, the court denied Twin City's motion to file the disputed materials under seal and ordered that Twin City produce unredacted copies of the Andrews claim file notes and the 199 "other" claim file notes.

[¶13.]    Twin City raises the following issues for our review:

1.    Whether the circuit court erred in holding that, based on this record, Twin City impliedly waived the attorney-client privilege for the Andrews and the 199 "other" claim file notes.

2.    Whether the circuit court erred in holding that Twin City impliedly waived the attorney-client privilege without conducting an in camera inspection of the claim file notes for the Andrews and the 199 "other" claim files.

3.    Whether the circuit court must analyze waiver of the attorney-client privilege under the respective state law where each of the 199 "other" claims arose.

**Standard of Review**

[¶14.]    Normally, we review "a circuit court's discovery orders under an abuse of discretion standard." *Dakota, Minn. & E. R.R. Corp. v. Acuity* (*DM & E*), 2009 S.D. 69, ¶ 47, 771 N.W.2d 623, 636. "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *In re Jarman*, 2015 S.D. 8, ¶ 19, 860 N.W.2d 1, 9 (quoting *Thurman v. CUNA Mut. Ins. Soc'y*, 2013 S.D. 63, ¶ 11, 836 N.W.2d 611, 616). However, "[w]hen we are asked to determine whether the circuit court's order violated a statutory privilege," *see* SDCL 19-13-3 (Rule 502(b)), "it raises a question of statutory interpretation requiring de novo review." *DM & E*,

2009 S.D. 69, ¶ 47, 771 N.W.2d at 636 (quoting *Maynard v. Heeren*, 1997 S.D. 60, ¶ 5, 563 N.W.2d 830, 833).

Analysis

[¶15.]     **1.     Whether the circuit court erred in holding that, based on this record, Twin City impliedly waived the attorney-client privilege for the Andrews and the 199 "other" claim file notes.**

[¶16.]     The circuit court concluded that Twin City impliedly waived the attorney-client privilege for the Andrews claim file notes and the 199 "other" claim file notes. The court appeared to have relied on two theories to support its conclusion of implied waiver: (1) Twin City impliedly injected the advice of counsel into the bad faith litigation and (2) Twin City completely delegated its claim handling function to outside counsel. The court did not enter any evidentiary findings in support of its implied waiver conclusions as to the Andrews claim file notes and the 199 "other" claim file notes, nor did the court allow Twin City to submit the 199 "other" claim file notes under seal. Accordingly, our review of this issue is limited to the incomplete record before us on appeal.

*Advice of counsel*

[¶17.]     Twin City argues that the circuit court erred when it applied a blanket waiver of the attorney-client privilege to the Andrews claim files notes and the 199 "other" claim file notes without first determining whether Twin City had affirmatively injected its reliance on the advice of counsel into the bad faith

litigation.[6] Twin City requests that this Court remand the case with instructions to enter specific and detailed findings regarding whether Twin City affirmatively injected its reliance upon the advice of counsel into the bad faith litigation such as would constitute an implied waiver under *Bertelsen v. Allstate Insurance Co.*, 2011 S.D. 13, ¶¶ 50-53, 796 N.W.2d 685, 702-03.

[¶18.] The attorney-client privilege is described in SDCL 19-13-3 (Rule 502(b)).[7] The client is the holder of the attorney-client privilege. *State v. Catch the*

---

6.    Andrews argues that this Court does not have jurisdiction to hear this intermediate appeal. Andrews points out that SDCL 15-26A-3(6) and SDCL 15-26-6 permit appeal of an intermediate order at the discretion of this Court if the appeal is filed within "thirty days after the . . . order shall be signed, attested, filed and written notice of entry thereof shall have been given to the adverse party." Andrews contends that the November and December circuit court orders from which Twin City appeals establish no new substantive obligations; rather, the substantive obligations arise from the earlier February and June orders. Thus, according to Andrews, Twin City failed to appeal within 30 days of the June order. Andrews's argument mischaracterizes the November and December orders. The November and December orders compelled Twin City, for the first time, to produce wholly unredacted claim file notes. Andrews concedes in his briefs to this Court that this new obligation is properly before this Court: "There is no doubt that this *new* obligation is properly before this Court on intermediate appeal." Because the subject of this appeal is the circuit court's ruling regarding waiver of the attorney-client privilege, we reject Andrews's argument.

7.    SDCL 19-13-3 (Rule 502(b)) provides:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

(1) Between himself or his representative and his lawyer or his lawyer's representative;

(2) Between his lawyer and the lawyer's representative;

(3) By him or his representative or his lawyer or a

(continued . . .)

*Bear*, 352 N.W.2d 640, 645 (S.D. 1984). As such, the attorney-client privilege "may only be waived by the client, or through [the client's] attorney." *DM & E*, 2009 S.D. 69, ¶ 51, 771 N.W.2d at 637. The burden of establishing a waiver of the attorney-client privilege rests with the party asserting the claim of waiver—in this case, Andrews. *Id.* In order to invoke a waiver of the privilege, "the record must 'demonstrate that the client impliedly or explicitly consented to his attorney waiving the attorney-client privilege on his behalf.'" *Id.* (quoting *State v. Rickabaugh*, 361 N.W.2d 623, 625 (S.D. 1985)).

[¶19.]       One of the well-established exceptions to the attorney-client privilege is the "advice of counsel" exception. *Kaarup v. St. Paul Fire & Marine Ins. Co.*, 436 N.W.2d 17, 21 (S.D. 1989). When a party expressly relies on "the advice of counsel as an essential element of his defense, that party cannot refuse to disclose such advice." *Id.* However, "most sophisticated litigants will know better than to dig that hole for themselves." *Bertelsen*, 2011 S.D. 13, ¶ 50, 796 N.W.2d at 702 (quoting *State Farm Mut. Auto Ins. Co. v. Lee*, 13 P.3d 1169, 1181 (Ariz. 2000)). Certainly, "[a] privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation." 8 John H. Wigmore, *Evidence in Trials*

---

(. . . continued)

representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;

(4) Between representatives of the client or between the client and a representative of the client; or

(5) Among lawyers and their representatives representing the same client.

*at Common Law* § 2327, at 636 (J. McNaughton rev. ed. 1961). In this case, the record is clear that, at this point in the bad faith litigation, Twin City has not expressly relied on the advice of counsel as an essential element of its defense.

[¶20.]     Nonetheless, "[a]n insurer need not expressly rely upon the advice of counsel to waive the attorney-client privilege." *Bertelsen*, 2011 S.D. 13, ¶ 50, 796 N.W.2d at 702. An insurer may impliedly waive the attorney-client privilege "by injecting privileged communications into a case." *Id.* When "an insurer makes factual assertions in defense of a claim which incorporate, expressly or implicitly, the advice and judgment of its counsel, it cannot deny an opposing party 'an opportunity to uncover the foundation for those assertions in order to contradict them.'" *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 259 (Del. 1995). "A waiver is to be predicated not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege." Wigmore, *supra* ¶ 21, § 2388 at 855. *See also Cerney v. Paxton & Gallagher Co.*, 119 N.W. 14, 16 (Neb. 1908) ("Any other rule would enable the client to use as a sword the protection which is awarded him as a shield."), *overruled on other grounds*, *Caster v. Moeller*, 126 N.W.2d 485 (Neb. 1964).

[¶21.]     In *Bertelsen*, we adopted and supplemented the implied waiver test from *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975). *Bertelsen*, 2011 S.D. 13, ¶¶ 50-53, 796 N.W.2d at 702-03. The *Hearn* test provides three criteria for a court

to consider in determining whether a party impliedly waived the attorney-client privilege:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit [or raising an affirmative defense], by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Id.* ¶ 50, 796 N.W.2d at 702 (alteration in original) (quoting *Hearn*, 68 F.R.D. at 581). "We supplemented[ed] the *Hearn* test to emphasize further the importance of protecting the attorney-client privilege." *Id.* ¶ 53, 796 N.W.2d at 703.

> First, the analysis of this issue should begin with a presumption in favor of preserving the privilege. Second, a client only waives the privilege by expressly or impliedly injecting his attorney's advice into the case. A denial of bad faith or an assertion of good faith alone is not an implied waiver of the privilege. "Rather, the issue is whether [the insurer], in attempting to demonstrate that it acted in good faith, actually injected its reliance upon such advice into the litigation." The key factor is reliance of the client upon the advice of his attorney. Finally, a client only waives the privilege to the extent necessary to reveal the advice of counsel he placed at issue.

*Id.* (citations omitted). *See also Harter v. University of Indianapolis*, 5 F. Supp. 2d 657, 664 (S.D. Ind. 1998) (stating that "when a client files a lawsuit [or raises an affirmative defense] in which his or her state of mind (such as good faith or intent) may be relevant, the client does not implicitly waive the attorney-client privilege as to all relevant communications unless the client relies specifically on advice of counsel to support a claim or defense").

[¶22.] Here, Andrews argues that Twin City injected its reliance upon the advice of counsel into the bad faith litigation by embedding attorney-client

privileged communications in the Andrews claim file notes and then redacting the communications. This practice of "embedding and redacting," Andrews contends, has compromised his "ability to determine [Twin City's] claim handling decisions and the grounds thereof."[8] Andrews alleges that this practice constitutes an implied waiver of the attorney-client privilege because it is inconsistent with the needs of a plaintiff who asserts a claim of bad faith.

[¶23.]        This theory of implied waiver asserted by Andrews misconstrues the *Bertelsen* test. Regardless of whether Twin City "embedded and redacted" attorney-client communications into the claim files notes as Andrews suggests, this practice does not demonstrate that Twin City injected its reliance on the advice of counsel into the bad faith litigation. Under *Bertelsen*, Andrews must demonstrate that Twin City asserted the attorney-client privilege as a result of an affirmative act, such as raising an affirmative defense, and then that Twin City specifically relied on the advice of counsel to support its argument that it acted in good faith. 2011 S.D. 13, ¶ 53, 796 N.W.2d at 703. There has been no such showing in this case.

[¶24.]        At this point in the litigation, Twin City has merely alleged that it did not act in bad faith. *See Bertelsen*, 2011 S.D. 13, ¶ 53, 796 N.W.2d at 703 (stating

---

8.    In making this argument, Andrews focuses on SDCL 58-3-7.4. This statute requires an insurer to maintain a complete claim file. Andrews argues that Twin City's practice of "embedding and redacting" is inconsistent with the requirements of SDCL 58-3-7.4. However, Andrews does not present any authority that states that an insurer is precluded from including attorney-client privileged information in the claim file. Additionally, Andrews does not provide any authority that suggests that this statute may be used to waive the attorney-client privilege if attorney-client privileged communications are included in the claim file.

that "[a] denial of bad faith or an assertion of good faith alone is not an implied waiver of the privilege"). Twin City has not placed at issue its subjective good-faith reliance on the advice of counsel such as would invoke an implied waiver of the Andrews and the 199 "other" claim file notes. *See id.*; *Allstate Ins. Co. v. Clancy*, 936 N.E.2d 272, 278 (Ind. Ct. App. 2010), *vacated*, *Allstate Ins. Co. v. Clancy*, 950 N.E.2d 1201 ("[A]n insurer that states that it was not acting in bad faith because it acted in accordance with the applicable law neither expressly, nor impliedly, raises the defense of advice [of] counsel. In such an instance, it is not the subjective good-faith reliance on the advice of counsel that constitutes the defense, but the objective compliance with applicable law.").

[¶25.]      Accordingly, the record does not support the circuit court's conclusion that Twin City impliedly waived the attorney-client privilege to the Andrews claim file notes and the 199 "other" claim file notes. The circuit court did not enter any findings as to whether Twin City injected, by an affirmative act, privileged communications into the litigation and thereby made the privileged information relevant to the bad faith litigation by specifically relying on the advice of counsel in support of its argument that it acted in good faith. *See Bertelsen*, 2011 S.D. 13, ¶ 53, 796 N.W.2d at 703. The circuit court's failure to determine whether Twin City interjected, by an affirmative act, privileged communications into the bad faith litigation constitutes reversible error.

[¶26.]      Furthermore, the attorney-client privilege is waived only "to the extent necessary to reveal the advice of counsel [Twin City] placed at issue." *Bertelsen*, 2011 S.D. 13, ¶ 53, 796 N.W.2d at 703. *See also People v. Madera*, 112 P.3d 688,

691 (Colo. 2005) (rejecting the finding that the defendant impliedly waived the entire attorney-client privilege on the basis that "'the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it'") (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003)). Thus, it is possible that the circuit court also erred by concluding that Twin City waived the privilege in its entirety. But, without any findings to support its blanket waiver conclusion, we are unable to determine if a blanket waiver is necessary.

### Complete delegation of claims handling function

[¶27.] The record reflects that the circuit court also relied on *DM & E* to support its conclusion that Twin City impliedly waived the attorney-client privilege. In *DM & E*, this Court held "that where an insurer unequivocally delegates its initial claims function and relies *exclusively* upon outside counsel to conduct the investigation and determination of coverage, the attorney-client privilege does not protect such communications." 2009 S.D. 69, ¶ 56, 771 N.W.2d at 638. Andrews contends that Twin City "completely delegated" its claim handling duties to outside counsel, and therefore the redacted communications were not protected by the attorney-client privilege because the attorneys were acting as claims adjusters in the underlying workers' compensation claim. *See id.*

[¶28.] An unequivocal delegation of the claims handling function is *not* an implied waiver of the attorney-client privilege; rather, it places the material "outside the scope of the asserted privileges." *Id.* ¶ 55 (quoting *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D. Minn. 1986)). Thus, the circuit court had no basis to rely on *DM & E* to support its conclusion that Twin City impliedly waived

the attorney-client privilege. Moreover, even if we were to address the merits of this argument, we are unable to discern based on the limited record before us whether Twin City delegated its claim handling function in the underlying workers' compensation action, and relied exclusively upon outside counsel.[9]

[¶29.]      **2.**      **Whether the circuit court erred in holding that Twin City impliedly waived the attorney-client privilege without conducting an in camera inspection of the claim file notes for the Andrews and the 199 "other" claim files.**

[¶30.]      The next issue is whether the circuit court was required to conduct an in camera review of the Andrews claim file notes and the 199 "other" claim file notes to determine whether Twin City either impliedly waived the attorney-client privilege, *see Bertelsen*, 2011 S.D. 13, ¶¶ 50-53, 796 N.W.2d at 702-03, or whether

---

9.      Andrews argues that *Bertelsen* and *DM & E* support the contention "that any proper test of a party's assertion of attorney client privilege must look to the evidentiary *effect* the successful assertion of such claim would have on the opposing party's ability to make its case." According to Andrews, the "operative question is not the defendant insurer's *intent*, or the *extent* of its delegation, but rather the *effect* its assertion of privilege has on the transparency of the claim-handling process[.]" The results-driven test that Andrews proposes is plainly inconsistent with this Court's precedent, as well as South Dakota statutory law, on the attorney-client privilege. The attorney-client privilege principally protects the holder of the privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed. 2d 584 (1981) (stating that the purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients"); *State Highway Comm'n v. Earl*, 82 S.D. 139, 147, 143 N.W.2d 88, 92 (1966) ("The purpose behind our attorney-client privilege is to encourage a client to freely communicate with his attorney without fear of disclosure."). This proposed test would shift the focus from the interests of the client in enforcing the privilege to the detrimental effect that exercising the privilege has on the adverse party. As we explicitly stated in *Bertelsen*, "the analysis of this issue should begin with a presumption in favor of preserving the privilege." 2011 S.D. 13, ¶ 53, 796 N.W.2d at 703. Accordingly, we reject Andrews's proposed test.

the communications were outside the scope of the asserted privilege. *See DM & E*, 2009 S.D. 69, ¶¶ 55-56, 771 N.W.2d at 638. Twin City argues that the circuit court should have conducted an in camera review of the disputed documents before making a determination as to implied waiver. We agree.

[¶31.]      We have held that "the preferred procedure for handling privilege issues is to allow for an in camera review of the documents[.]" *DM & E*, 2009 S.D. 69, ¶ 49, 771 N.W.2d at 637. The "party asserting privilege must make a showing to justify withholding materials if that is challenged." *Id.* ¶ 48, 771 N.W.2d at 636 (quoting 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2016.1 (2009)). "The question whether the materials are privileged is for the court, not the party, to decide, and the court has a right to insist on being presented with sufficient information to make that decision." *Id.* (quoting 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2016.1 (2009)). "The most feasible way for an insurer to satisfy [the burden of establishing that materials sought to be excluded from discovery on the basis of privilege] is to obtain judicial review of the materials in camera." *Unklesbay v. Fenwick*, 855 N.E.2d 516, 522 (Ohio Ct. App. 2006).

[¶32.]      In this case, there are two sets of documents at issue: the Andrews claim file notes and the 199 "other" claim file notes. In the February 11, 2013 order, the circuit court instructed Twin City to produce the Andrews claim file notes for the court for an in camera review.[10] Twin City complied and submitted the

---

10.    The February 11, 2013 court order provided:

(continued . . .)

Andrews claim file notes to the court for an in camera review. The circuit court

then issued an order on June 7, 2013, requiring Twin City to conform its redactions

to the analysis set forth in the order. Twin City produced a privilege log for the

Andrews claim file notes on July 31, 2013, pursuant to SDCL 15-6-26(b)(5). The

privilege log consisted of an unredacted copy of the claim file notes with the

redacted communications highlighted in yellow.[11] Then, during the November 5,

2013 hearing, Twin City again offered to provide the Andrews claim file notes to the

_____

(. . . continued)

> Accordingly, [Twin City] shall produce to Plaintiff, within 30
> days of the date of this order, those non-privileged documents
> falling within the scope of Requests Nos. 1, 2, 5, and 53 [i.e., the
> Andrews claim file]. It shall provide to the [c]ourt, within the
> same time frame, for *in camera* review the documents regarding
> which it continues to assert privilege. The [c]ourt will then
> make a final determination as to whether some or all such
> documents are subject to discovery.

11.  Andrews argues that Twin City's privilege log did not meet the statutory
requirements provided in SDCL 15-6-26(b)(5):

> When a party withholds information otherwise discoverable
> under these rules by claiming that it is privileged or subject to
> protection as trial preparation material, the party shall make
> the claim expressly and shall describe the nature of the
> documents, communications, or things not produced in a manner
> that, without revealing information itself privileged or
> protected, will enable other parties to assess the applicability of
> the privilege or protection.

We note that the privilege log submitted by Twin City complied with SDCL
15-6-26(b)(5). The highlighted communications allowed the circuit court to
"assess the applicability of the privilege or protection." *See id.* The court
accepted this privilege log without objection.

court for an in camera inspection.[12]  There is no indication in the record that the circuit court conducted an in camera review of the Andrews claim file notes once Twin City had complied with the June 7, 2013 order and unredacted more of the attorney-client communications.  Nor did the circuit court make any findings about the propriety of each redaction made by Twin City in the Andrews claim file notes.

[¶33.]        Regarding the 199 "other" claim file notes, Twin City provided the circuit court with copies of those documents pursuant to the February 11, 2013 order.  The first time Twin City offered to provide the court with unredacted copies of the 199 "other" claim file notes for an in camera review was in its brief on the motion for reconsideration after the November 5, 2013 hearing.[13]  Twin City did not offer to provide the court with the 199 "other" claim file notes for an in camera review during or before the November 5, 2013 hearing.[14]  At the December 3, 2013

_____

12.    During the November 5, 2013 hearing, Twin City stated as follows:

> **Twin City**: There is nothing more to produce on this.  Anything else that is compelled to be produced, Your Honor, is clearly attorney-client privilege.  If the [c]ourt would like us to produce, you know, samples, it's a lot of materials, but we would be happy to produce it again for in camera review.  That's as to the Andrews[] claim file, Your Honor.  There's not been any showing of waiver.

13.    Twin City stated as follows in its brief on the motion for reconsideration:

> Twin City asks this [c]ourt to allow it to submit for an in camera review all of the materials at issue, and requests this [c]ourt to make specific findings as to each claim file relating to the attorney-client communications at issue.

14.    During the November 5, 2013 hearing, Twin City stated:

> **Twin City**: The other 199 claim files are a completely different issue.  There is—as far as I know, plaintiff has not even made an attempt to argue that there's been some sort of waiver of the

(continued . . .)

-20-

hearing, Twin City again offered to provide the 199 "other" claim file notes to the court for an in camera review. The court rejected Twin City's offer and stated that "without a privilege log on this, I don't think there's anything that the Supreme Court is going to come forward. . . . I think that the process was not followed in this matter from the outset, and my ruling stands."

[¶34.]    Andrews argues that this Court has not held that there is a procedural *requirement* for a circuit court to conduct an in camera review before ruling on a party's assertion of the attorney-client privilege, but, rather, this Court has merely said that an in camera review is the *preferred* method. *See DM & E*, 2009 S.D. 69, ¶ 49, 771 N.W.2d at 637; *Arnoldy v. Mahoney*, 2010 S.D. 89, ¶ 33, 791 N.W.2d 645, 657. Thus, according to Andrews, the circuit court was not required to conduct an in camera review of the disputed documents. We disagree. The circuit court could not resolve the issue of implied waiver and complete delegation in this case without first conducting an in camera review of the disputed documents. Moreover, the circuit court indicated that it would conduct an in camera review of the Andrews claim file notes. However, even though Twin City complied and provided the court with the Andrews claim file notes, the court failed to make any findings to support its conclusions. Twin City subsequently offered to provide the court with copies of

_____

(. . . continued)

> attorney-client privilege in the other claim files. Many of those—some of those went into litigation, some of those have redactions, other don't, but there certainly cannot be said to have been a waiver in any of those, and certainly the plaintiff has not met his burden of proof in showing there has been a waiver.

the 199 "other" claim file notes for in camera review, which offer the court refused. While we do not hold that there is a procedural requirement to conduct an in camera review before ruling on a party's assertion of the attorney-client privilege, the present facts establish that Twin City satisfied its burden of triggering the circuit court's obligation to conduct an in camera review of the disputed documents.[15] *See DM & E*, 2009 S.D. 69, ¶ 48, 771 N.W.2d at 636 (holding that the "party asserting privilege must make a showing to justify withholding materials if that is challenged"). *See also Unklesbay*, 855 N.E.2d at 522 (stating that "[t]he most feasible way for an insurer to satisfy this burden is to obtain judicial review of the materials in camera").

[¶35.]     Upon review of the record, we conclude that the circuit court abused its discretion in failing to conduct an in camera review of the Andrews claim file notes and the 199 "other" claim file notes. Based on the facts of this case, an in camera review is necessary to determine whether Twin City completely delegated its claim handling function or impliedly waived its attorney-client privilege by injecting its reliance upon advice of counsel into the bad faith litigation by an affirmative act.

---

15.     Andrews argues that Twin City did not timely offer the 199 "other" claim file notes to the circuit court for an in camera review. Andrews points out that Twin City did not offer to provide those claim file notes until after the November 5, 2013 hearing on the motion to compel. Andrews argues that once the court ruled against Twin City on the motion to compel, the court was under no obligation to permit Twin City to then offer the 199 "other" claim file notes for an in camera review. We disagree. The record establishes that Twin City timely offered to provide the 199 "other" claim file notes to the court for an in camera review in its motion for reconsideration and during the December 3, 2013 hearing on the motion for reconsideration.

*See DM & E*, 2009 S.D. 69, ¶ 56, 771 N.W.2d at 638; *Bertelsen*, 2011 S.D. 13, ¶ 53, 796 N.W.2d at 703.

[¶36.] An in camera review is necessary in this case to determine whether Twin City "unequivocally delegate[d] its initial claims function and relie[d] *exclusively* upon outside counsel to conduct the investigation and determination of coverage[.]" *DM & E*, 2009 S.D. 69, ¶ 56, 771 N.W.2d at 638. The propriety of any determination of complete delegation rests on the nature and content of the communications. "To the extent that [Twin City] acted as claims adjusters, then, their work-product, communications to client, and impressions about the facts will be treated herein as the ordinary business of plaintiff, outside the scope of the asserted privileges." *Id.* ¶ 55 (quoting *Lilly*, 112 F.R.D. at 163). Thus, in order to determine whether Twin City completely delegated its claim handling function to outside counsel, the circuit court must conduct an in camera review of and make findings regarding the claim file notes at issue.

[¶37.] Likewise, the circuit court should have conducted an in camera review of the claim file notes before concluding that Twin City impliedly waived the attorney-client privilege by relying on the advice of counsel. *See Bertelsen*, 2011 S.D. 13, ¶ 53, 796 N.W.2d at 703. The attorney-client privilege is waived only to the "extent necessary to reveal the advice of counsel [Twin City] placed at issue." *Id.* The circuit court erred when it applied a blanket waiver of the attorney-client privilege without determining the extent, if any, of the implied waiver. An in camera review of the Andrews claim file notes and the 199 "other" claim file notes

#26891

would have enabled the circuit court to articulate findings and make that determination.

[¶38.]    **3.    Whether the circuit court must analyze waiver of the attorney-client privilege under the respective state law where each of the 199 "other" claim files arose.**

[¶39.]    Twin City contends that the proper legal analysis of whether it waived the attorney-client privilege with respect to the 199 "other" claim file notes is that the claim files should be analyzed pursuant to the state law governing each file. Twin City points out that most of the 199 "other" claim file notes originated in other jurisdictions and have no connection with South Dakota. Andrews responds that "the threshold problem with [Twin City's] proposed requirement is not the practical *difficulty* of conducting such an analysis . . . but rather the fundamental incoherence of the proposal."

[¶40.]    In *Chambers v. Dakotah Charter, Inc.*, we adopted "the most significant relationship approach to govern multi-state tort conflicts." 488 N.W.2d 63, 67 (S.D. 1992) (adopting Restatement (Second) of Conflict of Laws §§ 6, 145 (1971)). In determining the choice of law regarding an assertion of a privilege, the Restatement provides as follows:

> (1)    Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.
>
> (2)    Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted *unless there is some special reason*

-24-

> *why the forum policy favoring admission should not be given effect.*

Restatement (Second) of Conflict of Laws § 139 (1971) (emphasis added).[16] For privileged information, "[t]he state which has the most significant relationship with a communication will usually be the state where the communication took place[.]" Restatement (Second) of Conflict of Laws § 139 cmt. e (1971).

[¶41.]     To the extent that the 199 "other" claim file notes have no connection to South Dakota other than the circuit court compelling their production, the "most significant relationship" test is the appropriate analysis for evaluating whether the attorney-client privilege is waived for each claim file. The state with the "most significant relationship" to each claim file is generally the state where the communications took place. Once the circuit court has applied the "significant relationship" test and selected the state that satisfies the test, the court must apply the law of that state to determine whether the attorney-client privilege is waived. Accordingly, the circuit court on remand shall apply the "most significant relationship" test to some or all of the 199 "other" claim files as appropriate, if the court finds that any of the 199 "other" claim files are relevant to the bad faith

---

16.    In determining whether a "special reason" exists, the following factors are to be considered:

> (1) The number and nature of the contacts that the state of the forum has with the parties and with the transaction involved, (2) the relative materiality of the evidence that is sought to be excluded, (3) the kind of privilege involved and (4) fairness to the parties.

Restatement (Second) of Conflict of Laws § 139 cmt. d (1971).

litigation, in order to determine the appropriate law to be utilized to evaluate whether the attorney-client privilege is waived.

**CONCLUSION**

[¶42.] We reverse and remand for findings as to whether Twin City injected, by an affirmative act, its reliance upon the advice of counsel into the bad faith litigation thereby making the disputed communications relevant to the case such that would constitute an implied waiver of the attorney-client privilege. *See Bertelsen*, 2011 S.D. 13, ¶ 53, 796 N.W.2d at 703. If the circuit court finds that Twin City impliedly waived the attorney-client privilege by injecting the advice of counsel into the bad faith litigation, then the court must conduct an in camera review to determine and make findings as to the extent that the attorney-client communications should be revealed. *See id.* (holding that "a client only waives the privilege to the extent necessary to reveal the advice of counsel he placed at issue"). Regarding the claim of complete delegation, the circuit court must conduct an in camera review of the disputed documents to determine and make findings as to whether Twin City unequivocally delegated its initial claims function and relied *exclusively* upon outside counsel to conduct the investigation and determination of coverage. *See DM & E*, 2009 S.D. 69, ¶¶ 55-56, 771 N.W.2d at 638.

[¶43.] In addition, Twin City shall submit to the circuit court some or all of the 199 "other" claim files along with a privilege log, if the court determines that any of those claim files are relevant to this bad faith litigation, for an in camera review. *See id.* To the extent that any of the 199 "other" claim files are relevant to the bad faith litigation, the circuit court must apply the "most significant

relationship" test to each of the relevant 199 "other" claim files in order to determine under the law of the appropriate state whether the attorney-client privilege was waived.

[¶44.]    Reversed and remanded with directions for proceedings consistent with this opinion.

[¶45.]    GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and KONENKAMP, Retired Justice, concur.

[¶46.]    KERN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.