#27606-r-LSW

**2016 S.D. 67**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

KEITH WAYNEMCLAIN
HORNED EAGLE,                             Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBIN J. HOUWMAN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


BEAU J. BLOUIN
Minnehaha County
 Public Defender
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 29, 2016

OPINION FILED **09/28/16**

#27606

WILBUR, Justice

[¶1.]     During defendant's trial on an allegation of rape in the second degree, defendant moved the circuit court to order the prosecutor to produce any summaries written by the prosecutor or by others in the prosecutor's office documenting the victim witness's oral declarations about the alleged rape. The court denied defendant's motion after concluding that SDCL 23A-13-10(4) did not mandate production. The jury found defendant guilty. Defendant appeals. We reverse and remand.

## Background

[¶2.]     On September 28, 2014, in Sioux Falls, South Dakota, Cheryl Walking Crow called 911 to report that she had been raped earlier that morning. She explained that she had walked to a cement enclosure next to the Salvation Army building to sleep when a man approached her and raped her. Sioux Falls police officers Bridget O'Toole and Craig Boetel responded. Officer O'Toole noted that she did not observe any physical injuries on Walking Crow. Both officers took Walking Crow to the area near the Salvation Army building. There, the officers observed a man sleeping on the ground. The man, later identified as Keith Horned Eagle, appeared intoxicated. A preliminary breath test reported his blood alcohol content at 0.247 percent. According to Officer O'Toole, Horned Eagle claimed that he did not remember that he had been sleeping in the enclosure or whether a female was also sleeping there the night before. Horned Eagle agreed to speak with law enforcement at the Law Enforcement Center. Horned Eagle also consented to give

buccal, finger, and penile swabs for DNA purposes and to give the officers his clothing and other items from the scene for testing.

[¶3.]        The officers took Walking Crow to Avera Hospital to complete a sexual assault examination. The vaginal, cervical, oral, and anal perineum swabs obtained from Walking Crow were tested for evidence of semen. They also tested Walking Crow's underwear. As part of Walking Crow's sexual assault examination, the nurse collected from Walking Crow various swabs, fingernail scrapings, and pubic hair samples. The nurse also examined Walking Crow's body for evidence of injuries, finding none.

[¶4.]        On December 31, 2014, a grand jury indicted Horned Eagle with one count of second-degree rape in violation of SDCL 22-22-1(2). Horned Eagle pleaded not guilty. A jury trial began on May 6, 2015. The emergency room nurse, Jennifer Canton, testified that she did not take any photographs of Walking Crow because she observed no sign of injuries. Canton also testified that Walking Crow reported that she knew her attacker as an acquaintance. Canton relayed that Walking Crow reported that she knew her assailant as "Keith."

[¶5.]        A forensic scientist with the State of South Dakota, Amber Bell, testified with regard to the DNA testing of the sexual assault kit obtained from Walking Crow and the swabs and items collected from Horned Eagle. Horned Eagle's penile swab contained a DNA profile matching Walking Crow. One of Horned Eagle's finger swabs contained the DNA profiles of Horned Eagle and Walking Crow. According to Bell, the DNA matching Walking Crow obtained from Horned Eagle's swab samples did not indicate from what part of Walking Crow's

body the DNA originated. The sample could be from Walking Crow's skin cells, her hands, her mouth, her vagina, etc. Bell also testified that no swab from Walking Crow's person indicated the presence of semen and her underwear tested negative for the presence of semen. Because Bell detected no seminal fluid on the swabs from Walking Crow, Bell conducted no other tests to determine the presence of Horned Eagle's DNA on Walking Crow.

[¶6.] Walking Crow testified about the events leading up to the rape. She said she went to her friend Doug's house to shower before leaving to eat at The Banquet. After her meal, she walked to a gas station to purchase beer. She said that she ran into Horned Eagle as she exited the gas station and said hello to him while walking by. Walking Crow relayed that after obtaining the beer she went to a park to meet a friend. Walking Crow claimed that at the park she again saw Horned Eagle.

[¶7.] According to Walking Crow, later that night she went to a friend's house and continued drinking alcohol. She left her friend's house after midnight and went back to Doug's. Nobody was at Doug's house, and Walking Crow found her pillows and blankets laying outside the house. She took them and walked toward the Salvation Army to sleep. She reported that she believed someone was walking behind her. On redirect, Walking Crow testified that Horned Eagle was the person walking behind her.

[¶8.] Once Walking Crow reached the cement enclosure by the Salvation Army building, she laid out her blankets on the ground and began drinking more alcohol. Walking Crow said that Horned Eagle sat down and had a couple drinks

with her while the two of them talked. She said that at some point Horned Eagle stood up, took his pants off, and attempted to make Walking Crow give him oral sex. She claimed she pushed him away. She said Horned Eagle pushed her down and took her pants off. Walking Crow claimed she kicked and struck Horned Eagle but succumbed to his strength. She said Horned Eagle struck her in the chest with his knee, put his forearm against her throat, and pushed a pillow down on her face. Walking Crow explained that she was scared and stopped fighting. She said that, at that point, Horned Eagle vaginally penetrated her with his penis. She recalled that Horned Eagle ejaculated inside her. Walking Crow testified that when Horned Eagle finished, he laid beside her and held her. A few hours later, while Horned Eagle slept, Walking Crow put on her clothes and walked to the gas station to call 911.

[¶9.] During a break in Walking Crow's testimony, counsel for Horned Eagle informed the circuit court that he would be requesting access to the notes taken by the prosecutor or notes taken by anyone in the prosecutor's office that summarized Walking Crow's prior oral statements. Counsel claimed that the notes were discoverable under SDCL 23A-13-10(4). The State objected and argued that the prosecutor's notes are protected attorney work product. The court agreed and held that the prosecutor's notes (or notes by others in the prosecutor's office) did not fall under SDCL 23A-13-10.

[¶10.] The jury found Horned Eagle guilty of rape. The court sentenced Horned Eagle to fifty years in prison with ten years suspended. Horned Eagle appeals and asserts one issue for our review:

Whether Horned Eagle was denied due process when the circuit court denied his request to inspect written notes in the possession of the prosecuting attorney containing prior statements made by Walking Crow.

**Standard of Review**

[¶11.] We normally review a court's discovery decision for an abuse of discretion. *Andrews v. Ridco, Inc.*, 2015 S.D. 24, ¶ 14, 863 N.W.2d 540, 546. When the circuit court's decision raises an issue of statutory interpretation, our review is de novo. *Id.*

**Analysis**

[¶12.] Horned Eagle contends that the circuit court erred when it denied his request that the court order the State to produce notes in the possession of the prosecutor containing summaries of Walking Crow's prior statements related to the allegations against him. He avers that the circuit court should have reviewed the prosecutor's notes in camera to determine if the notes contained attorney work product or relevant statements by Walking Crow on the subject matter of her testimony at trial. According to Horned Eagle, the court's failure to order the State to produce Walking Crow's prior statements violated his right to due process and his right to confront a witness against him.

[¶13.] In response, the State seems to believe that Horned Eagle seeks only the notes summarizing Walking Crow's *grand jury testimony*. The State writes, "Horned Eagle's request is without merit since the entire verbatim statement of the grand jury was provided." According to the State, "[w]hatever small quotes, notes or impressions that the state's attorney's office may have jotted down *during* [*Walking Crow's*] *grand jury testimony* are work product[.]" (Emphasis added.)

[¶14.]     This case does not involve whether the State is obligated to produce notes taken by the prosecutor or others in the prosecutor's office during a witness's grand jury testimony. In fact, Horned Eagle makes clear he does not seek the notes taken during Walking Crow's grand jury testimony. This case concerns whether "[a] summary of an oral declaration made by someone other than the witness that has been reduced to writing" under SDCL 23A-13-10(4) includes the summaries of Walking Crow's oral declarations made by the prosecutor or others in the prosecutor's office.

[¶15.]     According to the State, subsection (4) should not be interpreted to include a prosecutor's notes taken while interviewing a witness because the "main objective" of the overall statutory scheme is akin to the federal rule—to allow for "discovery of verbatim or near verbatim statements by the testifying witness." A comparison of the federal rule against South Dakota law, however, reveals that the federal rule does not contain the statutory language at issue here. *Compare* 18 U.S.C. § 3500(e) (Jencks Act) *with* SDCL 23A-13-10.

[¶16.]     Under SDCL 23A-13-7, "[a]fter a witness called by the prosecuting attorney has testified on direct examination, the court shall, on motion of the defendant, order the prosecuting attorney to produce any statement, as defined by SDCL 23A-13-10, of the witness in the possession of the prosecuting attorney which relates to the subject matter as to which the witness has testified." A "statement" is defined to include, "in relation to any witness called by the prosecuting attorney":

> (1) A written statement made by such witness and signed or otherwise adopted or approved by him;
> (2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim

> recital of an oral statement made by such witness and recorded contemporaneously with the making of such oral statement;
>
> (3) A statement, however taken or recorded, or a transcription thereof, if any, made by such witness to a grand jury;
>
> (4) A summary of an oral declaration made by someone other than the witness that has been reduced to writing.

SDCL 23A-13-10. In contrast, the Jencks Act does not have a provision similar to subsection (4). It provides that "[t]he term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means":

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e).

[¶17.] Nonetheless, the State also directs this Court to *State v. Muetze*, where we held that the police officer's original notes were not subject to production. 368 N.W.2d 575, 580 (S.D. 1985). But *Muetze* is distinguishable. In *Muetze*, the defendant sought to discover the investigating officer's original notes to "search" for "information which could be used to impeach prosecution witnesses." 368 N.W.2d at 580. The State had already given to defendant the "typed or handwritten reports from each investigating officer[.]" *Id.* And the Court noted that "all 'statements' were turned over to Muetze's counsel prior to trial." *Id.* at 581. Here, on the other hand, the State has not made any similar assertion that it has produced all statements under SDCL 23A-13-10(4).

[¶18.] Alternatively, the State submits that ordering the production of the prosecutor's notes from interviews with a witness "would subject prosecutors to be called regularly as witnesses . . . to explain comments they made while talking with witnesses." The State claims that "a prosecutor might be fearful that mere visiting with a witness might subject personal thoughts, comments, opinions, theories or impressions to become part of the defendant's discovery." The State disagrees that having a court review the notes in camera would remedy that concern. According to the State, having a court review the notes in camera and ordering redaction "could result in road blocks to the prosecutor's responsibility to do justice and thoroughly investigate a case."

[¶19.] First, SDCL 23A-13-5 protects attorney work product. It provides that chapter 23A-13 "does not authorize the discovery or inspection of reports, memoranda, or other internal prosecution documents made by the prosecuting attorney or other employees of law enforcement agencies in connection with the investigation or prosecution of the case[.]" SDCL 23A-13-5. Second, SDCL 23A-13-10(4) is unambiguous, and the State presents no alternative interpretation. Upon Horned Eagle's motion, the State was required to produce any summary of Walking Crow's oral declarations written by someone other than Walking Crow on the subject matter of Walking Crow's testimony.

[¶20.] By no means is SDCL 23A-13-10(4) intended to give defense attorneys access to the prosecutor's attorney work product. But Horned Eagle has a constitutional right to due process and a right to confront his accusers. "In all criminal prosecutions the accused shall have the right . . . to demand the nature

and cause of the accusation against him; to have a copy thereof; to meet the witnesses against him face to face[.]" S.D. Const. art. VI, § 7; *see also* S.D. Const. art VI, § 2. Here, the credibility of Walking Crow's testimony was crucial to the State's case. There were no eyewitnesses, and the evidence presented at trial conflicted with Walking Crow's previous statements. For example, Walking Crow claimed that Horned Eagle ejaculated into her vagina, but seminal fluid testing indicated that no semen was present in Walking Crow's vagina, on her person, or in her underwear. And the forensic expert testified that the presence of semen would remain detectible anywhere from twenty-four hours to three days. Walking Crow's person and clothing were tested within five hours of the incident. Walking Crow also claimed to have been pushed by Horned Eagle, that a struggle ensued on the ground, and that he held her down with a knee on her chest. The police officers and the nurse testified that they found no injuries on Walking Crow's person.

[¶21.]     Because SDCL 23A-13-10(4) unambiguously requires the State to produce any "summary of an oral declaration made by someone other than the witness that has been reduced to writing[,]" the circuit court erred when it denied Horned Eagle's motion. Horned Eagle is entitled to have notes in the possession of the prosecutor containing summaries of Walking Crow's prior statements related to the allegations against him produced for an in camera review by the circuit court to determine if those notes contain discoverable statements under SDCL 23A-13-10(4). *See, e.g.*, *People v. Szabo*, 447 N.E.2d 193, 201-02 (Ill. 1983); *see also Dakota Minn. & E. R.R. Corp. v. Acuity*, 2009 S.D. 69, ¶ 49, 771 N.W.2d 623, 637 ("the preferred procedure for handling privilege issues is to allow for an *in camera* review of the

documents"). If, after an in camera review of the notes, the court concludes that the notes contain discoverable statements under SDCL 23A-13-10, which could have affected the outcome of the trial, the court is directed to vacate Horned Eagle's judgment of conviction and sentence and schedule a new trial. *See State v. Birdshead*, 2015 S.D. 77, ¶ 49, 871 N.W.2d 62, 79 (the suppressed evidence must be prejudicial in nature for defendant to receive a new trial). If, on the other hand, the notes do not contain statements discoverable under SDCL chapter 23A-13, the circuit court is directed to enter a new judgment of conviction and impose the same sentence.

[¶22.]    Reversed and remanded.

[¶23.]    GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.